UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| CHARLES DERRICK KELLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 2:09-cv-00297-JMS-TAB |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

**Entry Discussing Motion for Summary Judgment**

Plaintiff Charles D. Keller ("Keller") filed this civil action pursuant to the Federal Tort Claims Act.[1] Keller claims that on October 25, 2007, the United States was negligent in that employees of the Bureau of Prisons ("BOP") failed to protect him and, as a result, he was assaulted and injured by another inmate at the United States Penitentiary, Terre Haute, Indiana (USP Terre Haute). He seeks $150,000.00 in compensatory damages.

The United States seeks summary judgment on the basis that Keller's claims are barred by the discretionary function exception to the Federal Tort Claims Act (FTCA). 28 U.S.C. § 2680(a). For the reasons explained below, the United States' motion for summary judgment [dkt. 125] is **granted.**

**Standard of Review**

A motion for summary judgment asks that the Court find that a trial based on the uncontroverted and admissible evidence is unnecessary because, as a matter of law, it would conclude in the moving party's favor. *See* Fed. R. Civ. Pro. 56. To survive a motion for summary

---

[1] The operative pleading is the amended complaint. Dkt. 20.

1

judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Rule 56(c)(1) requires a party asserting that a fact is undisputed or genuinely disputed to support that asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. Pro. 56(c)(1)(A). The Court need only consider the cited materials, Fed. R. Civ. Pro. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson v. Cambridge Indus.,* 325 F.3d 892, 898 (7th Cir. 2003). Furthermore, reliance on the pleadings or conclusory statements backed by inadmissible evidence is insufficient to create an issue of material fact on summary judgment. *Id.* at 901.

The key inquiry, then, is whether admissible evidence exists to support a plaintiff's claims, not the weight or credibility of that evidence, both of which are assessments reserved to the trier of fact. *See Schacht v. Wis. Dep't of Corrections,* 175 F.3d 497, 504 (7th Cir. 1999). When evaluating this inquiry, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue for trial . . . against the moving party." *Celotex,* 477 U.S. at 330.

### Scope of Evidence

The parties dispute the admissibility and availability of certain evidence.

First, Keller's objection to the admissibility of the declarations of Bleier (dkt. 126-1), Eckert (dkt. 126-2), and Joyner (dkt. 126-4) is **overruled**. These declarations comply with Rule 56(c)(4) in that they are made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. Keller's

argument that the declarations should be disregarded because the declarants were not timely disclosed as expert witnesses is not persuasive. Dr. Bleier, Dr. Eckert and Mr. Joyner are not expert witnesses. The matters set out in the declarations are based upon the personal knowledge of each declarant gained while employed at the USP Terre Haute. Specifically, Dr. Bleier had personal knowledge of the intake screening process as he was one of the individuals who conducted the intake screening for Keller. Dr. Eckert had knowledge of the intake screening process based upon his personal experience with the process and a record review. Dr. Eckert's declaration corroborates Dr. Bleier's testimony, but otherwise it is of little value. The Court did not rely on Dr. Eckert's testimony in the Statement of Facts that follows. Finally, Mr. Joyner's declaration is based upon his personal knowledge of the duties and responsibilities of the various officers, based on his position as a supervisory official.

Second, Keller argues that he is entitled to an adverse inference based on the spoliation of evidence. These arguments were previously considered and rejected. See Entry of July 25, 2013, at Dkt. 184. No adverse inference is warranted.

Third, Keller argues that he was not provided with the evidence necessary to prove his case during the discovery process. Specifically, the United States did not provide all of the documents Keller sought in his requests for production of documents. In connection with that pursuit, Keller filed a motion to compel. Dkt. 113. The motion to compel and the scope of documents to be produced with or without redactions were addressed in an Entry Discussing Motion to Compel, dkt. 132, an Order on Discovery and related Matters, dkt. 144, and an Entry Discussing Objections to Order on Discovery, dkt. 164. In ruling on each of these discovery disputes the magistrate judge and the undersigned both "considered the United States' security concerns, as well as the plaintiff's need for the documents to prosecute his case." Dkt. 164 at p.

3

2. Consideration of these discovery disputes included substantial *in camera* review of documents. For example, the magistrate judge reviewed all of the documents listed in privilege logs A, B, and C. Following this *in camera* review, the magistrate judge ordered the defendants to produce additional discovery documents but found that most of the disputed documents were properly withheld from Keller because they "do not shed any light" on the Bureau of Prisons' policies or the discretionary function issue, but do raise legitimate safety concerns. Dkt. 144 at p 2-3. The undersigned subsequently gave targeted consideration to five additional documents *in camera*. The Court found that additional redaction to three documents was warranted. These additional redactions did not contain information which would have assisted Keller in proving his case. The substantial *in camera* review of documents in this case accommodated the United States security concerns and Keller's need for information to prove his case. *See Parrot*, 536 F.3d at 638 (stating that Government's concerns could have been accommodated through *in camera* review of unredacted materials). Keller's speculation that a "smoking gun" exists which the Court allowed the United States to withhold is unfounded and inconsistent with this Court's document review.

Finally, Keller extensively quotes and relies on materials without proper citations. For example, Keller states that there are certain provisions in "General Post Orders of U.S.P. Terre Haute", and allegedly quotes from those provisions. Pl.'s Response at 18. However, the United States' review determined that Keller's assertions are based on unacknowledged excerpts from *Sledge v. U.S.*, 883 F. Supp. 2d 71, 76-77 (D.D.C. 2012), which quotes from General Post Orders from Federal Correctional Institution Allenwood. The United States assessment appears correct. There is nothing before the Court that would support any finding that General Post Orders from

Allenwood apply in this case.[2] Similarly, Keller relies heavily on the arguments raised in *Chess v. U.S.,* 836 F.Supp.2d 742, 752 (N.D. Ill. 2011) without citation. Quoting relevant case law is appropriate, of course, but the source of this information should have been acknowledged by Keller to facilitate judicial review.

## Statement of Facts

The following statement of facts was evaluated pursuant to the standards set forth above. That is, this statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to Keller as the non-moving party with respect to the motion for summary judgment. *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150 (2000).

Keller is currently confined at the United States Penitentiary, Marion, Illinois. Keller was confined at USP Terre Haute from August 8, 2007, until May 21, 2008. Keller was assaulted by another inmate on his way to the mess hall for lunch at USP Terre Haute on October 25, 2007. The assault took place on the sidewalk directly below Tower 7.

Joseph Bleier was a Staff Psychologist at USP Terre Haute in August 2007. When Keller arrived at USP Terre Haute on August 8, 2007, he went through the intake screening process. Dr. Bleier was one of the staff members who conducted the intake screening process. Dr. Bleier asked Keller a series of questions (through a written questionnaire) to determine whether he was appropriate for placement into general population at USP Terre Haute. Dr. Bleier verbally asked Keller if there was any reason he could not go to general population. Keller told Dr. Bleier that his mental health symptoms were impairing his ability to function and that the psychotropic

---

[2] In any event, the Court in *Sledge* determined that the post orders referenced did not specifically prescribe a course of action with respect to the protection of inmates that was violated.

5

medication was not alleviating his symptoms. Keller explained his "concerns in regards to my mental health symptoms and my safety if placed in the general population."[3] Keller testified that when his mental health symptoms are not under control he is a danger to himself and others. Based upon the interview with Keller, Dr. Bleier determined that Keller was stable for placement in the general population and there was no need for Keller to be placed in the Special Housing Unit ("SHU") or on suicide watch because he was oriented, non-hallucinating, non-suicidal, and demonstrated no threat to others. Also during the intake, Dr. Bleier noted the medication Keller was taking, the need for a follow up, as well as the need for tele-psychiartry. Dr. Bleier concluded that Keller was not mentally unstable for purposes of being placed in the general population.

### Compound Officers and Tower 7 Officers

The term "compound" as used in the post orders refers to the physical plant of the institution, including the corridors, yard, housing units and program areas. It is not limited to the general area where the assault occurred or to areas from which the assault would be visible. Officers working the yard are not able to see all areas of the yard at all times. More specifically, depending upon the location of the compound officer, the officer may not be able to see the location where Keller was found after the assault at all times.

Compound Officers #1, #2, and #3 at USP Terre Haute work as a team. Their duties are interchangeable and the positions are not stationary. Responsibilities of the Compound Officers include supervising the collection and disposal of trash from the general population housing units, walking the entire perimeter of the fence line of USP Terre Haute (over one mile in circumference) and supervising all inmate movement during their respective shifts. Supervision

---

[3] Keller Affidavit, ¶ 7 at Dkt. 167-1.

of inmate movement may also include escorting inmates to or from the SHU. There is no set criteria that requires Compound Officers to be within any certain area within the compound at any particular time.[4]

Two officers are assigned to Tower 7 at USP Terre Haute (which is an armed assignment). The officers working the tower have responsibilities which include, but are not limited to, visually observing the recreation area and the compound at USP Terre Haute. They are further responsible for opening doors and grills, as necessary. It is virtually impossible for the officers to observe every single area of the compound or recreation yard. Typically from this observation post, the Tower 7 Officers have the ability to alert staff to potential disruptions which may occur on the recreation yards, roof tops and corridors. If any type of unusual activity is observed, the Tower 7 Officers will report it to the Operations Lieutenant. Directly below the Tower, there is a blind spot where the officers cannot observe activities which may be occurring at the base of the Tower. At the time Keller alleges he was assaulted by another inmate at USP Terre Haute, there could have been 700 or more inmates on the compound (including in the recreation yard and sidewalks).

## Discussion

The analysis of Keller's claims is guided by both the FTCA and Indiana law. The FTCA serves as a limited waiver of the sovereign immunity of the United States. It therefore opens the

---

[4] Keller cites to various provisions to show the existence of mandatory duties on the part of certain officers. Pl.'s Response at 18-26. Upon review, however, none of these provisions create a mandatory duty of any kind. Keller relies upon an assertion that as there is a statement in the Post Order Review Sheet that "Officers assigned to this post are expected to use their initiative and good judgment in all situations" therefore, "not monitoring the traffic on the compound is not sound correctional judgment and is laziness in carrying out the procedures in the post order." Pl.'s Response at 20. In addition, Keller asserts that two general statements in Program Statement 2410.09, ¶ 10.a and b that "employees are required to remain fully alert and attentive during duty hours" and "respond immediately and effectively to all emergency situations" create a mandatory duty. Response at 22.

federal government to tort liability "under circumstances where the United States, if a private person, would be liable to the claimant." 28 U.S.C. § 1346(b). Because a claim brought under the FTCA is governed by "the law of the place where the act or omission occurred," the substantive law of Indiana governs Keller's failure to protect claim. 28 U.S.C. § 1346(b); *Gil v. Reed*, 381 F.3d 649, 658 (7th Cir. 2004). Thus, Keller's claim "requires him to satisfy Indiana tort law by showing: (1) a duty owed to the plaintiff by the defendant; (2) the defendant's breach of the duty by failing to meet the appropriate standard of care; and (3) injury to the plaintiff caused by the defendant's failure to perform its duty." *Parrott v. U.S.*, 536 F.3d 629, 635 (7th Cir. 2008). To prevail in a failure to protect claim Keller must show that "BOP staff knew or reasonably should have known of a potential problem between the two inmates" but failed to act to prevent an altercation. *Parrott*, 536 F.3d at 637. And, under Indiana law, the custodian's duty is to exercise reasonable care to protect a prisoner, but "the custodian is not an insurer against harm," and "does not have a duty to prevent a particular act." *Sauders v. County of Steuben* 693 N.E.2d 16, 18 (Ind.1998)

The amended complaint alleges that the United States breached its duty to protect him by improperly placing him in general population and failing to adequately monitor the area where he was attacked. The United States argues that it is entitled to summary judgment under the discretionary function exception to the waiver of sovereign immunity contained in the FTCA. 28 U.S.C. § 2680.[5] The discretionary function exception has two requirements. *United States v.*

---

[5] That section provides, in part, that:

> The provisions of this chapter and section 1346(b) of this title shall not apply to: (a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

*Gaubert*, 499 U.S. 315 (1991). First, the conduct alleged must involve an element of judgment or choice. *Id.* at 322; *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536 (1988); *Reynolds v. U.S.*, 549 F.3d 1108, 1112 (7th Cir. 2008). "The inquiry boils down to whether the government conduct is the subject of any mandatory federal statute, regulation, or policy prescribing a specific course of action." *Baum v. United States*, 986 F.2d 716, 720 (4th Cir. 1993). Conduct cannot be discretionary if "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow" because "the employee has no rightful option but to adhere to the directive." *Berkovitz,* 486 U.S. at 535. Second, given that the exception protects only governmental actions and decisions based on considerations of public policy, the challenged discretionary conduct must amount to a permissible exercise of policy judgment. *Reynolds,* 549 F.3d at 1112. The issue is whether the nature of the challenged conduct is susceptible to policy analysis--not the subjective intent of the actor exercising discretion. *Gaubert*, 499 U.S. at 325. "The great weight of the case law suggests that if a decision regarding the protection, safety, and classification of prisoners is discretionary (i.e., there are no mandatory directives) then such a decision is grounded in public policy and the discretionary function applies." *Sledge v. U.S.*, 883 F. Supp. 2d 71, 87 (D.D.C. 2012) (citing cases). Thus, § 2680(a) protects a federal employee's conduct whenever the employee must "act according to one's judgment of the best course." *Dalehite v. United States*, 346 U.S. 15, 34 (1953); *Berkovitz*, 486 U.S. at 536.

    1.    **Placement in General Population**

Keller asserts that the Chief Psychologist, Staff Psychologist Joseph Bleier, and Staff Psychologist Proffett placed him in the general population, despite being aware that Keller had a fear of the general population and believed the general population posed a danger to him. *See*

---

28 U.S.C. § 2680.

Amended Complaint Count VIII, para. 22-26; Count IX, para. 22-26; and Count X, para. 22-26. The United States seeks summary judgment on the basis that any claim based on the decision to place Keller in general population is barred by the discretionary function exception.

Keller does not dispute that where to house an inmate within an institution is a decision subject to policy analysis. Instead, he argues that his claim is not barred by the discretionary function exception as the actions of the BOP staff in connection with his intake and continued medical care did not comply with certain purportedly mandatory provisions in BOP Program Statements. Pl.'s Response at 7-11, 26-31, and 35-39. Keller suggests that if these provisions were complied with he would not have been placed in the general population and if he was not in general population, he would not have been assaulted. As explained below, however, there is no provision that would have required him to be segregated from the general population. Also, Keller's argument ignores the fact that the discretionary function exception applies, even if the discretion is abused. 28 U.S.C. § 2680(a). Thus, any dispute over the decision to place Keller in the general population is barred by the discretionary function exception. Each of Keller's specific contentions is discussed below.

      a.      Program Statement 5290.15

First, Keller asserts that there was a failure to comply with mandatory provisions of Program Statement 5290.15, in that he was not properly "cleared" to be placed in the general population. Pl.'s Response at 26 and 37. Program Statement 5290.15 states "[t]he interviewer shall also review SENTRY information and the Inmate Central File or Presentence Investigation Report (PSI), if available, and make a decision whether the inmate is suitable for placement in general population." See Def. Reply at p. 14. Keller asserts that this provision was not followed. Pl.'s Response at 10-11. However, Dr. Bleier did review the SENTRY information and would

have reviewed the Inmate Central File and PreSentence Report if they had been available, but they were not. Bleier Second Dec. ¶ 2. Thus, even if the provision Keller relies upon was mandatory, it was complied with. Even if Dr. Bleier's review of the SENTRY information and Inmate Central File and PreSentence Report could be considered negligent, such a claim is barred by the discretionary function exception. *See* Response at 39 ("after he was negligently placed in the general population."). Further, Keller has not presented any evidence from which the Court could conclude that information in Keller's SENTRY information, Inmate Central File, or PreSentence Report created a mandatory, non-discretionary duty to place Keller somewhere besides the general population. For example, Keller has failed to present any evidence tending to show that there was information in his Inmate Central File or PreSentence Report, if the file was even available, that would indicate that Keller was unsuitable for placement in the general population.

        b.     Program Statement 5324.07

Keller also asserts there was a violation of Program Statement 5324.07. Pl.'s Response at 26 and 37. Keller apparently contends that there was a failure to comply with a provision of the Program Statement that states "Psychology Services and the Case Management Coordinator are to develop local procedures to clear inmates with a PSY ALERT assignment (e.g., a psychologist provides written comments and signature on the Intake Screening form, or sends a clearance memorandum to the unit team via Groupwise."). What Keller thinks is mandated is not clear. Keller asserts that under Program Statement 5324.07, para. 8, "the BOP had a further duty in Keller's case to enforce its own classification decision during his particular intake screening due to his arrival at U.S.P. Terre Haute with a 'Psychology Alert' assignment." Response at 37. *See also* Response at 26 ("this established operating procedure by which the classification officials of

Keller's transferring institution would alert the officials of Keller's receiving institution to take required steps to re-enforce its own classification decision did not function as intended in this instance.").

This provision cannot be understood to require BOP employees to give Keller any specific classification or placement under local procedures. This language deals with methods for the screening decision to be documented or communicated; that it does not affect the discretion Dr. Bleier had to as whether or not to "clear" Keller. Upon arrival at USP Terre Haute, Keller was evaluated by a psychologist in a face-to-face interview and cleared for placement in the general population. Program Statement 5324.07 did not impose any additional mandatory duties. This provision is insufficient to overcome the discretionary function exemption.

    c.  Program Statement 5310.13

Keller asserts a failure to comply with "certain directives aimed at monitoring federal prisoners suffering from mental illness." Response at 27-28 and 38. Specifically, Keller asserts that two provisions of Program Statement 5310.13 relating to "Mentally Ill Inmates, Institution Management of" establish mandatory duties in connection with his treatment. Keller first contends that a mandatory requirement for monthly meetings imposed by Program Statement 5310.13 ¶ 9 was not met, as there was a gap between meetings from September 7, 2007, to October 17, 2007. Keller's Response at 28-29. Keller points to no provision of any Program Statement saying exactly when any such meeting was to occur, or if it had to occur on the same date each month. There was a meeting in September and October. Finally, nothing in this provision required any change of housing or treatment for Keller. The Court is unable to discern how the alleged failure to comply with this provision could be understood to have caused the attack.

Keller also contends that Program Statement 5310.13 ¶ 12 required mandatory quarterly meetings which involve various staff. Response at 30-31 and 38-39. There is nothing in the record to establish that this did not occur. More importantly, Keller does not establish the relevance of this alleged violation or how it could possibly impact his claim.

In summary, Keller's claim that he was improperly placed in general population is barred by the discretionary function exemption.

### 2. Failure to Adequately Monitor

Keller also argues that the Bureau of Prisons employees breached its duty to protect him by failing to adequately monitor the area in which he was attacked.

#### a. Officer Placement

First, Keller alleges that Director Lappin, Warden Veach, Captain Smith, and Lt. Johnson failed to place officers in locations to ensure that all areas of the prison were monitored and observed (particularly the area around Tower # 7), thereby eliminating the possibility of violence. *See* Amended Complaint Count II (allegations against BOP Director Lappin); Count III, para. 25 (allegations against Warden Veach); Count IV, para. 24 (allegations against Complex Captain Smith); Count V, para. 25 (allegations against Operations Lieutenant Johnson).

This duty to eliminate violence flows from 18 U.S.C. § 4042. *See United States v. Muniz*, 374 U.S. 150, 164-65 (1963) (holding that "the duty of care owed by the BOP to federal prisoners is fixed by 18 U.S.C. § 4042"). Section 4042 states that the BOP, under the direction of the Attorney General, shall provide for safekeeping and protection of those persons in its custody. 18 U.S.C. § 4042(a)(2), (3). This statute does not dictate the manner in which these duties must be fulfilled. *See Calderon v. United States*, 123 F.3d 947, 950 (7th Cir. 1997)(finding discretionary function exception applied to prisoner's FTCA claim for government's negligent

failure to prevent an attack on him by his cellmate). Rather, the statute imposes a duty of care with BOP discretion in its implementation. *Id.* ("[w]hile it is true that [§ 4042] sets forth a mandatory duty of care, it does not . . . direct the manner by which the BOP must fulfill this duty."). Therefore, even though the BOP has a general duty of care to safeguard prisoners, it retains sufficient discretion in the means it may use to fulfill that duty to trigger the discretionary function exception.

In support of his claims, Keller references the Seventh Circuit's decision in *Palay v. U.S.*, 349 F.3d 418 (7th Cir. 2003) and the Fifth Circuit's unpublished order in *Garza v. United States*, 161 Fed. Appx. 341 (5th Cir. 2005). In both cases, the district court dismissed the action pursuant to Rule 12 of the Federal Rules of Civil Procedure. In *Garza*, the plaintiff brought a claim under the FTCA for injuries sustained during a clash between rival gangs in a penitentiary recreation yard. The Fifth Circuit held that the discretionary function exception did not bar Garza's claim that a specific guard failed to patrol the recreational yard as directed in a Post Order and that such failure was a proximate cause of his injuries. *Garza*, 161 Fed. Appx. 341 at 346. The case was remanded for a determination on the merits. In *Palay*, the Seventh Circuit held that the plaintiff's negligent reassignment and failure to protect claims had to be fleshed out with evidence before applicability of the FTCA's discretionary function exception could be determined and that dismissal, at the pleading stage was improper. Both *Garza* and *Palay* reflect that the failure to protect an inmate from violence may arise from discretionary judgments rendered in furtherance of prison policy or from negligence having nothing whatever to do with discretionary judgments. *Palay*, 349 F.3d at 431. Given this fact, dismissal of these claims at the pleading stage without developing the record was improper. That is not the case here. In this

14

case, the record has been fully developed and evidence introduced consistent with Rule 56 of the Federal Rules of Civil Procedure.

For these reasons, any claim based solely on the duty imposed by § 4042 is barred by the discretionary function exception. In particular, the claim that prison administrators were negligent in their duty to place officers in locations as to eliminate violence is barred.

      b.      Duty to Patrol and Monitor

Second, Keller asserts that at the time he was assaulted, Correctional Officers Rush, Estep, Skeel, Schmalansee, and Holstine were not within their assigned areas, specifically the area in or around Tower 7 or failed to adequately patrol and observe. *See* Amended Complaint Count VI, paras. 23 and 25; Count VII, para. 23.

Keller asserts that the actions of the correctional officers assigned as compound officers or to tower positions were not within the scope of the discretionary function exception, as there were mandatory provisions in post orders and program statements that required action that would have prevented or reduced the severity of the assault upon him. *See* Pl. Response at 11-26 and 39-50. But for the reasons that follow, Keller is mistaken.

With respect to the Compound Officers, Keller explains that a provision of the post orders for Compound Officers 1 and 2 states in part that "The noon meal will be in progress. Monitor inmate movement on the Compound." Pl.'s Response at p. 40. The area covered by the term "compound" includes the entire physical plant of the institution. This provision allegedly created a mandatory duty on the part of compound officers to have observed the part of the compound where the assault occurred (apparently along with every other inch of the compound.) But, as the United States correctly points out, that text does not provide any specific mandate as to how the compound monitoring will occur, nor does it provide any direction as to where the

15

officer doing the monitoring must be located or what areas of the compound must be watched. In such a case, the discretionary function exception applies. *See, e.g., Miller v. United States*, 163 F.3d 591, 595 (9th Cir. 1998) ("existence of some mandatory language does not eliminate discretion when the broader goals sought to be achieved necessarily involve an element of discretion").

Keller also asserts that a mandatory duty is created by three provisions from the Special Instructions for USP Compound Officers relating to Safety Conditions, First Responder Instructions, and Emergency Reporting Protocols. *See* Pl.'s Response at 39-40. Keller additionally relies upon two provisions of Program Statement 3420.09, Standards of Employee Conduct, one of which requires BOP employees "to remain fully alert and attentive during duty hours" and another which states that "it is mandatory that employees respond immediately and effectively to all emergency situations." Pl.'s Response at 40.

The United States argues that none of the provisions relied upon by Keller sets out any specific manner in which the alleged mandatory duties of the Compound Officers are to be performed. The United States' position is persuasive. The provisions referenced by Keller do not set for any specific, nondiscretionary function or duty that does not involve an element of judgment or choice. Instead, the provisions contain generalized language that is too vague to prescribe a specific course of action for an employee to follow.

As to the tower officers, Keller identifies no specific provisions of any post orders or Program Statements that he asserts create a specific duty for the tower officers. *See* Pl.'s Response at 16-17. He asserts, however, that the tower officers "failed to patrol, observe, or otherwise monitor and respond diligently to an emergency situation . . . due to laziness or inattentiveness." Response at 45-46. Keller's contention that the alleged failure to monitor and

16

respond diligently to an emergency situation must have been due to laziness or inattentiveness is not well founded. Keller has failed to show that there is any provision that required specific action from the tower officers. The other provisions from Program Statements or post orders that Keller seeks to rely upon are even less specific and contain even less direction regarding the activity to be undertaken. *Freeman v. United States*, 556 F.3d 326, 338-39 (5th Cir. 2009) ("ostensibly mandatory language" setting out broad goals is within the scope of the discretionary function exception, and statements of responsibilities were "so general that they . . . fail to prescribe a nondiscretionary course of action."). Further, there is no evidence that the correctional officers were asleep or that they left their designated duties to "enjoy a cigarette or a snack." *Palay v. U.S.*, 349 F.3d 418, 432 (7th Cir. 2003). "That type of carelessness would not be covered by the discretionary function exception, as it involves no element of choice or judgment grounded in public policy considerations." *Id.* In conclusion, there was no mandatory provision to specifically observe the area where Keller was attacked at the time he was attacked.

The decision regarding how to best monitor the inmate population is subject to policy analysis. As the Seventh Circuit explained,

> Calderon unconvincingly asserts that 'policy judgment is not involved in day to day, hour to hour, minute to minute actions of correctional officers in patrolling the cell blocks of a prison such as FCI Oxford.' We disagree with Calderon's contention. It is clear that balancing the need to provide inmate security with the rights of the inmates to circulate and socialize within the prison involves considerations based upon public policy.

*Calderon*, 123 F.3d 947, 950-51 (7th Cir. 1997). Accordingly, Keller's claim that BOP employees failed to adequately monitor the area where he was attacked is barred by the discretionary function exemption.

## Conclusion

For the reasons explained above, Keller has failed to present evidence that the United States breached a mandatory, non-discretionary duty owed to Keller by the United States which caused Keller to be attacked by another inmate. There is no evidence that BOP staff knew or reasonably should have known of a potential problem between Keller and his attacker. There is no evidence that any BOP employee stood by and watched as Keller was attacked.[6] In addition, Keller, who bears the burden of proof, has pointed to no violation of any mandatory statute, regulation or directive which could plausibly be understood to have resulted in his injuries. To the contrary, the evidence reflects that there were no mandatory rules, regulations, procedures or statutes 1) which were violated in connection with placement of, or the duties and responsibilities of, the Compound Officers and Tower Officers at USP Terre Haute, 2) which required the placement of officers in locations such that the officers could observe the area where Keller alleges the assault occurred; 3) which required any specific officers to be within or patrolling the area near Tower 7 at the time the assault allegedly occurred; or 4) which would require the Tower Officers to view the area where the assault allegedly occurred at the time Keller asserts it occurred. Under these circumstances, the United States is entitled to summary judgment on the basis that Keller's claims regarding the assault are barred by the discretionary function exception to the FTCA. 28 U.S.C. § 2680(c).

The motion for summary judgment [dkt. 125] is **granted.** Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Date: 07/26/2013

---

[6] *See Grieveson v. Anderson*, 538 F.3d 763, 778 (7th Cir. 2008) (stating that witnessing an inmate assault, but failing to intervene, constitutes a paradigm case of deliberate indifference).

Distribution:

CHARLES DERRICK KELLER
MARION - USP
MARION U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 1000
MARION, IL 62959

Jeffrey L. Hunter
UNITED STATES ATTORNEY'S OFFICE
jeff.hunter@usdoj.gov