# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# TERRE HAUTE DIVISION

| | |
|---|---|
| CHARLES DERRICK KELLER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 2:09-cv-00297-JMS-TAB ) |
| UNITED STATES OF AMERICA, | ) ) |
| Defendants. | ) |

**Entry Denying Motion for Summary Judgment**

Plaintiff Charles Derrick Keller, a federal prisoner, was assaulted by another prisoner while confined at the United States Penitentiary in Terre Haute, Indiana (the "USP Terre Haute") on October 25, 2007. Keller claims that the attack resulted from the prison's negligence. Specifically, "[h]e argues that several prison employees violated mandatory regulations and orders governing their conduct, thus allowing the attack to occur and continue. According to Keller, Dr. Bleier did not examine all of his available medical documents before deciding to release him into the general prison population, as required by applicable regulations. Keller also contends that the prison guards assigned to Tower 7, Unit 1, and Unit 2 failed to monitor their assigned areas of the yard because they were lazy or inattentive in violation of their post orders." *Charles Keller v. United States,* No. 13-3113 at 2-3 (7th Cir. November 17, 2014) (Slip Opinion), dkt. 207. Keller has sued the United States pursuant to the Federal Tort Claims Act ("FTCA") to recover damages for his injuries. The United States seeks summary judgment as to all claims alleged against it and Keller has opposed this motion.

1

For the reasons explained below the motion for summary judgment [dkt. 266] is **denied** and this action will be resolved either through settlement or the bench trial set for April 17, 2017.

**I. Summary Judgment Standard**

Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).

A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007). "The applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Systems, Inc.,* 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson,* 477 U.S. at 248).

## II. Federal Tort Claims Act

The substantive law applicable to this motion for summary judgment was clearly set forth in the Seventh Circuit's Opinion remanding this action. The Seventh Circuit stated:

> The Federal Tort Claims Act (FTCA) gives district courts exclusive jurisdiction over claims "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); see also 28 U.S.C. § 2674. Prisoners can sue under the FTCA "to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." *United States v. Muniz*, 374 U.S. 150, 150 (1963); *see also, e.g., Coulhurst v. United States*, 214 F.3d 106 (2d Cir. 2000) (allowing prisoner to pursue FTCA claim); *Bultema v. United States*, 359 F.3d 379 (6th Cir. 2004) (same); *Gil v. Reed*, 381 F.3d 649, 659 (7th Cir. 2004) (same); *Mackovich v. United States*, 630 F.3d 1134 (8th Cir. 2011) (same).
>
> This waiver of the United States' sovereign immunity is limited by several exceptions, including the discretionary function exception codified in 28 U.S.C. § 2680(a). The exception is in the second half of a provision that states in full: "The provisions of this chapter and section 1346(b) of this title shall not apply to—(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."
>
> Case law elaborates the scope of this discretionary function exception. Two requirements must be met. First, the act involved must be discretionary in the sense

that it "involves an element of judgment or choice." *Palay v. United States*, 349 F.3d 418, 427 (7th Cir. 2003), *quoting United States v. Gaubert*, 499 U.S. 315, 322 (1991) (internal formatting omitted). This means that where an employee deviates from a course of action prescribed by federal statute, regulation or policy, the employee's acts are not immune from suit. *Gaubert*, 499 U.S. at 322; *Berkovitz v. United States*, 486 U.S. 531, 536 (1988); *Palay*, 349 F.3d at 427. Second, "the exception protects only governmental actions and decisions based on considerations of public policy." *Gaubert*, 499 U.S. at 322; *Palay*, 349 F.3d at 427–28; *Calderon v. United States*, 123 F.3d 947, 949 (7th Cir. 1997).

The discretionary function exception is an affirmative defense to liability under the FTCA that the government must plead and prove. *Parrott v. United States*, 536 F.3d 629, 634–35 (7th Cir. 2008); *Reynolds v. United States*, 549 F.3d 1108, 1112 (7th Cir. 2008); *Stewart v. United States*, 199 F.2d 517, 520 (7th Cir. 1952); *S.R.P. ex rel. Abunabba v. United States*, 676 F.3d 329, 333 n.2 (3d Cir. 2012) (collecting cases from other circuits). To support summary judgment under the exception, the government must offer evidence that shows beyond reasonable dispute that its conduct was shielded by the exception.

*Keller,* No. 13-3113 at 3-5.

### III. Procedural History

On July 26, 2013, this Court found that Keller's claims were barred by the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a), and granted summary judgment in favor of the United States on Keller's claims. Keller appealed and the Seventh Circuit reversed and remanded this case for further proceedings.

In reversing summary judgment in favor of the United States, the Seventh Circuit rejected the government's argument that all prisoner attacks fall within the discretionary function exception. The Seventh Circuit stated that Keller has alleged that both the intake psychologist and the prison guards assigned to monitor the relevant sections of the yard violated mandatory regulations that

4

governed their conduct. Therefore, if the guards and intake psychologist failed to comply with mandatory regulations and orders, their alleged negligence would not fall within the scope of the discretionary function exception. *Keller,* No. 13-3133 at 6.

The Seventh Circuit was unable to conclude whether the discretionary function applied in this case based on the evidence in the record. Specifically, the Seventh Circuit stated that it could not determine what procedures and regulations applied to the intake psychologist and prison guards at the Terre Haute facility. *Id.* at 7. This was a result of the government's objections to releasing certain information to the *pro se* prisoner plaintiff out of safety concerns. In an effort to get Keller the materials he needed, the documents he requested were reviewed *in camera* to determine what materials were relevant to Keller's prosecution of his claims and to allow for the redaction of unnecessary but sensitive statements. The Court's failure to order (and the United States' to file) copies of the unredacted materials to be entered into the electronic record *ex parte* created a situation in which the Seventh Circuit was unable to conclude (as this Court did in granting summary judgment) that the documents contained no mandatory procedures or directives violated by the intake psychologist and prison guards stationed at Units 1 and 2. *Id.* at 7-8. The Seventh Circuit remanded this action so that the record could be expanded to include any specific regulations and orders governing the conduct of the intake psychologist and prison guards stationed at Units 1 and 2. *Id.* at 8.

No further development of the claim based on the misconduct of the guards stationed at Tower 7 was directed given Keller's concession that there is a blind spot at the base of Tower 7. *Id.* at fn. 1. Keller argues in his opposition brief that "there is nothing in the record to suggest that the attack occurred in blind spot for Tower 7 officers." Dkt. 286 at 7-8. This of course overlooks his

own admission. The Seventh Circuit found specifically that, "Keller concedes there is a blind spot at the base of Tower 7, so the guards stationed in Tower 7 cannot see the area where Keller was attacked. Accordingly, Keller cannot base his claim upon alleged negligence by the Tower 7 guards." *Keller*, 771 F.3d at n.1. This district court will not reconsider on remand an issue expressly decided by the higher court, simply because the plaintiff on remand has injected uncertainty into the record. Any claim of negligence based upon the actions of the Tower 7 guards has been decided and will not be considered further.

In an effort to fully comply with the Seventh Circuit's mandate to create a better-developed record, counsel was recruited to represent the plaintiff. Discovery was reopened and pursued with vigor.[1]

Following this effort, the United States again moved for summary judgment. Dkt. 266. This was followed by a brief in support, response, reply and surreply. Dkts. 269, 286, 295, and 301. It is this motion which is now before the court.

### IV. Evidentiary Objections

Given the scope and nature of the claim at issue, the amount of evidence submitted and the disagreements regarding that evidence is surprising. Because many of the evidentiary issues raised are expected to be more easily resolved at trial, the Court's observations and rulings on these objections are limited.

---

[1] The Court is grateful to Andrew M. McCoy, Haroon Anwar, Katrina Michelle Kelly, Terry Elizabeth Hall, and Trenton Morton for accepting the Court's request for assistance and their diligent efforts on behalf of Mr. Keller.

**A.** *United States' Declarations*

Keller argues that certain paragraphs in the declarations of Dr. Bleier, Dr. Eckert, Hector Joyner, Lloyd Rush, and Steven Estep submitted in support of the United States' motion for summary judgment should be stricken because the information contained therein was not timely disclosed and because the new testimony is inconsistent with the declarant's deposition testimony. Specifically, Keller argues that the Court should strike the following: Bleier Declaration: ¶¶ 3, 4, 6 (Dkt. No. 266-1); Eckert Declaration: ¶¶ 4–9, 11, 12, 14 (Dkt. No. 266-3); Joyner Declaration: ¶¶ 3–6 (Dkt. No. 266-5); Rush Declaration: ¶¶ 3–5 (Dkt. No. 266-7); and Estep Declaration: ¶¶ 3–5 (Dkt. No. 266-8). According to Keller, the paragraphs he seeks to strike include information absent from any other source available to Keller and would have been responsive to interrogatories Keller served on the BOP on June 15, 2015. Keller argues that if the Court considers this untimely information, Keller will be prejudiced. The United States argues in response that the information in the declarations is not new information and that it was made known to Keller during the discovery process.

Keller's concerns can be adequately addressed through cross-examination of the witnesses and relevant objections at trial.

**B.** *Kovach's Statements*

The United States objects to the admission of Joseph A. Kovach's witness statement because it is not in the form of an affidavit. Dkt. 130-1 at pp. 2-3. This objection can be remedied if Kovach is called to testify at trial.[2]

---

[2] Keller points out that this Court previously stated: "At this point in the proceedings the court will accept for the purposes of summary judgment that the statement of Kovach found at dkt. 130-1 at p. 2-3 is true and that Kovach's testimony at trial would be consistent with that statement." Dkt.

## C. *Keller's Medical Records*

The United States challenges the admissibility of November 6, 2007, notes from Dr. Dennis Profitt, Ph.D, who was a staff psychologist at USP Terre Haute in 2007 treating Keller. At issue is the doctor's monthly progress notes which state:

> The inmate was seen in the SHU for his monthly MDS MEN ILL session. He was recently placed in the SHU b/c he was assaulted for, according to unofficial reports, making disrespectful remarks toward another inmate. The inmate reported that he is not doing well, despite exhibiting a much improved mental status (notably, he was much calmer and his thinking was much clearer and connected). He provided no specificity w/ respect to his complaint of not doing well.

See Dkt. 167-13. Keller argues that Dr. Proffitt's notes should be admitted as evidence under Federal Rules of Evidence 803(4). This Rule states "[a] statement that: (A) is made for – and is reasonably pertinent to—medical diagnosis or treatment and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause" are not excluded by the rule against hearsay. Fed. R. Evid. 803(4).

The United States' objection is sustained. This record cannot be submitted for the purpose of proving that Keller was attacked for making disrespectful remarks toward another inmate. The reason for this ruling is that there is no basis to conclude that the "unofficial reports" were made for medical diagnosis or treatment nor do these "unofficial reports" describe the general cause for medical treatment. This is not a situation where Keller's statements regarding his present condition for the purpose of diagnosis and treatment were recorded. A patient has motivation to be truthful in such circumstances, "unofficial reports" do not.

---

132 at 3. This accommodation was made given Keller's *pro se* status and the fact that Kovach's statement was not material to the Court's prior ruling. Counsel does not face the same barriers to inmate communication as the *pro se* plaintiff and was expected to only submit admissible evidence for consideration at summary judgment.

8

**D.** *Exhibit 5 of Skeel's Deposition*

Included in Keller's Appendix of Exhibits to his Opposition to Defendants' Motion for Summary Judgement is a portion of Jennifer Skeel's deposition, along with "Exhibit 5" from her deposition. Dkt. 283-13. In his Opposition brief, however, Keller includes a picture that he identifies as "[Dkt. 283-13 at 26 Skeel Dep. Ex. 5)]," but which contains several additions to the deposition exhibit, including typed comments and identifications. Keller argues that these alterations are based on the testimony of multiple witnesses and counsel's personal observations of the USP Terre Haute facilities. These alterations are impermissible. The altered version of Skeel Dep. Ex. 5 shall not be considered as evidence. The competing exhibits are provided below for easy comparison.

Most troubling to the United States is a large white block covering three housing areas, but distant from Tower 7, with the text inserted, "Between B-1 and B-2, general vicinity where Keller was found." [Filing No. 286 at 7 (Opp. Br.).] This is in direct contradiction to Keller's testimony that he was assaulted "directly below a look-out tower, more specifically tower #7." Filing No. 20 at ¶ 5 (Am. Compl.); Filing No. 266-9 at 6 (Keller Dep. at p. 6, ln. 1-13).





The Court agrees with the United States that the Skeel's Exhibit 5 was impermissibly modified. It is Keller's admission that resulted in the Seventh Circuit finding no negligence on behalf of the Tower 7 guards. As explained previously, this issue will not be reconsidered under these circumstances.

### E. *Dr. Byrd and Mr. Bard's Testimony*

The United States objects to the admissibility of Keller's expert witnesses' testimony. Keller relied on the testimony of the BOP's expert witnesses as well as his own (Dr. Byrd and Mr. Bard) to argue that genuine disputes of material fact exist. (See Dkts. 283-1, 283-2, 283-3, 283-10, 283-11, 283-20, 283-21, 283-22).

The United States' objections to Keller's experts' testimony can be better addressed during the course of the bench trial. The experts will not be permitted to testify on questions of law, but (if qualified) may provide their opinions regarding whether the Compound Officers assigned to Unit 1 and Unit 2 and the intake psychologist had mandatory or discretionary duties.

An additional word of caution is necessary. The fact that the experts' testimony is not being excluded at this point in the proceeding does not mean that it will ultimately be accepted or deemed relevant. Keller points out that his expert witnesses reviewed the incident reports, reviewed the Post Orders, and reviewed the testimony and affidavits of others, and, based on their experience, they reached opinions about the officers' actions (or failures to act) on the day in question. It is hard to see how this testimony will be of any benefit to the Court's determination of the merits of either the discretionary function exception or the underlying merits of Keller's tort claim. This Court is quite capable of reviewing the incident reports, Post Orders, and testimony and reaching a conclusion regarding whether the employees at issue failed to comply with mandatory procedures and further

if the United States is liable to Keller for the injuries Keller suffered when attacked by another inmate. Similarly, calling on an expert witness to testify regarding contradictions in other witnesses' testimony will not be permitted. The better course is for counsel to bring those contradictory statements to the Court's attention through cross examination.

In addition, Keller should use caution before introducing expert testimony opining about whether BOP employees abused their discretion. The question is whether the BOP employees had discretion, not whether they abused their discretion. The plain language of the discretionary function exception to the FTCA provides that no liability shall lie for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, **whether or not the discretion involved be abused**." 28 U.S.C. § 2680(a) (emphasis added); *see also Employers Ins. of Wausau v. United States*, 27 F.3d 245, 248 (7th Cir. 1994) ("[Plaintiff] cannot challenge the EPA's decision by bringing an action in tort pursuant to the FTCA, even if, as [Plaintiff] alleges, the EPA acted negligently or abused its discretion."); *Boruski v. United States*, 803 F.2d 1421, 1429 (7th Cir. 1986) (citing *United States v. Hylin*, 469 U.S. 807 (1984) (*remanding* 715 F.2d 1206 (7th Cir. 1983) for further consideration) (instructing that negligence in the implementation and enforcement of mandatory federal mine safety regulations was immunized under the discretionary function exception.).

Despite this language, Keller argues that testimony regarding whether BOP employees abused their discretion should be permitted. In support, Keller points to case law that he argues shows BOP employees who abuse the discretion they have will not be shielded by the FTCA. *See Rich v. United States*, 811 F.3d 140, 147 (4th Cir. 2015); *Coulthurst v. United States*, 214 F.3d 106,

109–110 (2d Cir. 2000). But Keller reads too much into these rulings. In *Rich* and *Coulthurst,* the appellate courts held that the discretionary function exception would not bar a suit where the federal actor's negligence was a result of laziness or careless inattention. This is because discretionary conduct cannot be grounded in a policy decision when that conduct is marked by individual carelessness or laziness. Thus, the discretionary function exception applies even if the BOP employee(s) abused his or her discretion, unless the employee(s) failed to exercise any discretion as a result of laziness or careless inattention. This is consistent with the remand order in this case. The Seventh Circuit noted that if prison officials behaved negligently without making a discretionary judgment of the type shielded by the exception, the discretionary function exception would not apply to their conduct. *Keller,* 771 F.3d 1021, 1024 (citing *Palay*, 349 F.3d at 432). For example, prison guards who "left the unit unattended in order to enjoy a cigarette or a snack" would not be covered by the exception, because they would not have made the kind of discretionary judgment that the exception is designed to protect. *Id.* At trial Keller's focus should not be on whether the BOP employees abused their discretion, but rather on whether they failed to exercise their discretion as a result of laziness or careless inattention.

The Court is relying on counsel to employ their professional judgment in determining whether expert testimony is appropriate. If the parties continue to disagree, the Court will be prepared to rule on any objections made at trial, when the reliability, relevancy and scope of the expert's testimony can be clarified.

## V. Statement of Undisputed Facts

The following material facts are not genuinely in dispute and will be treated as established in this case consistent with Rule 56(g) of the *Federal Rules of Civil Procedure*.

A. *Inmate Intake Procedures*

The Federal Correction Complex in Terre Haute ("FCC Terre Haute") consists of a United States Penitentiary, Federal Correctional Institution, and a Federal Prison Camp and is located in Terre Haute, Indiana. When an inmate arrives at an institution, an inmate undergoes an intake screening process, which takes place in the Receiving and Discharge area of the institution. Part of that process includes a determination as to an inmate's housing assignment. For inmates who have substantial mental health concerns that require extra care, that process is set forth in Bureau of Prisons ("BOP"), Program Statement 5324.07.

Program Statement 5324.07 states in relevant part:

> 8. **INTAKE SCREENING.** When an inmate with a PSY ALERT assignment arrives at his or her designated facility, staff are to follow the steps below:
>
> - The first task involves determining if the inmate can be placed in general population. Ordinarily, an inmate with a PSY ALERT assignment will not be placed in general population until a psychologist reviews and clears him or her.
>
> - The SENTRY-generated Intake Screening Form now includes a Psychology Alert prompt. When unit team staff see that the PSYCH ALERT is "YES", they are to contact Psychology Services (i.e., Chief or on-call psychologist) for clearance before placing the inmate in general population.
>
> - When contacted, a psychologist will conduct a face to face interview, and then determine the inmate's suitability for a general population unit. Psychology Services and the Case Management Coordinator are to develop local procedures to clear inmates with a PSY ALERT assignment (e.g., a psychologist provides written comments and signature on the Intake Screening form, or sends a clearance memorandum to the unit team via Groupwise).
>
> - Based on this interview, a psychologist will determine whether the PSY Alert assignment should be removed.

Dkt. 266-12 at 4-5. Program Statement 5324.07 also requires psychology professionals to "review[] and consider[]" the "special psychology needs of the inmates" and to create

14

"localized procedures" to clear inmates who present with a PSY Alert during intake. Dkt. 266-12 at 1, 4.

At the time Keller was cleared for placement in general population at the FCC Terre Haute, that facility did not have a local procedure written down.

Dr. Steve Eckert is the Chief Psychologist at the FCC Terre Haute, and has been since November 2004. As Chief Psychologist, Dr. Eckert implemented local procedures for the FCC Terre Haute. Dr. Eckert's testimony is that as part of the local procedures, a psychologist reviews available paperwork, relevant Central File documentation if available, clinical history including psychology and medical records, relevant documents that accompanied the inmate upon transfer, the inmate's current clinical presentation, and any information the inmate provided to staff, or failed to provide to staff, and uses the information to make a recommendation, based on an individualized assessment, as to whether the inmate was suitable for placement into the general population. This recommendation is documented in the inmate's Psychology Data System ("PDS") records and communicated to the Unit Team.

### B. *Keller Arrives at FCC Terre Haute*

Keller arrived at FCC Terre Haute on August 8, 2007. Keller received a "PSY Alert" designation upon his transfer to USP Terre Haute because he attempted to commit suicide by swallowing razor blades in June 2007.

Because Program Statement 5324.07 applied to Keller based on his previous mental health or behavioral issues, Keller had to be cleared by a psychologist prior to being placed in general population.

15

Joseph Bleier, a psychologist assigned to the Psychology Department and who reported to Dr. Eckert, reviewed materials concerning Keller and interviewed him face-to-face for approximately 5-10 minutes.[3] Dr. Bleier determined that a recommendation for general population placement was appropriate based upon Keller's safety and security needs.

### C. *The FCC Terre Haute Compound*

The term "compound", as used in Post Orders, is the entire area inside the secure perimeter fence around the USP Terre Haute. "Compound" includes all the corridors, yard, housing units, and program areas. The area of responsibility of compound officers is the entire compound.

Various correctional officers are positioned throughout USP Terre Haute, including, for example, Housing Unit Officers, Corridor Officers, Compound Officers, Tower 7 Officers, and others. Post Orders address the duties correctional officers, including Compound Officers, are expected to perform while at their post.

The Post Orders for Compound Officer 1 and 2 includes the following:

11:30 a.m. The noon meal will be in progress. Monitor inmate movement on the Compound.  When assigned inside the West corridor, ensure each and every inmate clears the metal detector and/or is pat searched prior to entering and departing the West Corridor.

11:30 a.m.  In accordance with the Inmate Movement Schedule, Unicor/CMS work call will be conducted.

12:15 p.m.  Conduct a trash call.

There are no Post Orders for Compound Officer 3 during the shift when the assault to Keller occurred. During the lunch/mainline movement there would have been approximately 300 inmates moving.

---

[3] The nature of the materials reviewed and the Questions asked and Answers given during this interview are disputed.

16

On October 25, 2007, a lunch/mainline movement was happening at the time of the assault.

**D.** *October 25, 2007*

On October 25, 2007, after being in the general population for 78 days, Keller was assaulted by an inmate from another unit. Keller was assigned to Housing Unit C on the North side of the Compound and the inmate who assaulted Keller, Wayne Robison, lived in housing unit E-2 on the South side of the Compound.

Keller had been released to lunch and was walking from his C-unit to the dining hall when he was attacked by Offender Robison at approximately 12:20 pm.

Keller did not know the inmate who assaulted him and had no contact with him before the assault. Keller did not advise any correctional officer that anyone had threatened him before the assault. Prior to the assault, no one had threatened him or made threatening gestures toward him.

The incident started at 12:20 and staff called for assistance at 12:22. Keller was noticed by B-2 Unit Officer Secrest. The correctional officers who responded to the call for assistance or submitted memos were all housing unit officers and lieutenants. Although there were three compound officers on duty that day—Ms. Skeel, Mr. Estep, and Mr. Rush [Dkt. 283-32]—there is no record of them responding to the incident. Ms. Skeel, Mr. Rush, and Mr. Estep do not recall the assault on Mr. Keller on October 25, 2007.

On October 25, 2007, between noon and 1:00 p.m., Officer Lloyd Rush was assigned as Compound Officer 1; Officer Steve Estep was assigned as Compound Officer 2; and Specialist Jennifer Skeel was assigned as Compound Officer 3.

Keller sustained multiple physical injuries as a result of the attack, including abrasions and swelling to the head and facial areas, he had a tooth knocked out, suffered hearing loss, and was taken to an outside hospital for medical treatment.[4]

### E. *June 13, 2007 Assault*

Prior to the incident concerning Keller, an assault of an inmate had occurred on June 13, 2007, in the central area of USP Terre Haute, that resulted in a homicide. Following this assault, an After Action Review was performed by the BOP. The review included a review of the entire incident, including Post Orders, staffing, and specifics of the incident.

Recommendations regarding location or placing of staff members can be made as a result of such a review if recommendations are deemed appropriate for safety or security reasons. The After Action Review did not recommend staff be assigned to be present in the area where the fatal assault occurred or to be required to be in a position to observe such area at any time. After that assault there was no mandatory rule, regulation, procedure, statute, or Post Order that would have required posting an officer to observe the area where the assault upon Keller occurred. There was and is no mandatory requirement to change or alter Post Orders in response to an inmate on inmate assault or any other reason. The BOP is not mandated to post staff in specific locations because of an assault by rule, regulation, procedure, statute, or Post Order.

### VI. Material Facts in Dispute

As discussed above, to support summary judgment under the discretionary function exception, the government must offer evidence that shows beyond reasonable dispute that its conduct was shielded by the exception. Keller's attack on the credibility of the BOP's employees'

---

[4] The severity of the mental effects resulting from the attack are disputed.

testimony regarding the relevant intake procedures and his evidence regarding the interpretation of the relevant Post Orders has created plausible room for disagreement. Thus, the United States has not met its burden and a trial to evaluate the evidence and testimony is warranted to determine what procedures and regulations applied to the intake psychologist and prison guards at the Terre Haute facility.

The following material facts are in dispute regarding the United States' affirmative defense:

- What was the intake procedure at USP Terre Haute for placing inmates in general population when they arrive with a PSY ALERT designation?
- Did that intake procedure comply with Bureau of Prisons ("BOP"), Program Statement 5324.07?
- Did the intake psychologist violate USP Terre Haute's procedure such that Keller was inappropriately placed in general population?
- What mandatory procedures or directives applied to the BOP Compound Officers assigned to Units 1 and 2 at the time of the attack?
- Did the Compound Officers assigned to Units 1 and 2 comply with all mandatory procedures or directives at the time of the attack?

The bench trial is also an opportunity for the Court to resolve the merits of the underlying negligence claims; specifically, whether Keller can establish that there was a duty that was breached by BOP employees that resulted in the assault upon him.[5]

---

[5] The United States has the burden of proving its affirmative defense, but Keller has the burden of proving his negligence claim. Given the development of this case, the affirmative defense and merits of Keller's claim shall both be resolved at the bench trial.

## VII. Conclusion

For the reasons stated above, the defendants' motion for summary judgment [dkt. 266] is **DENIED**. This action shall be resolved through settlement or trial. The bench trial in this action has been confirmed for April 17, 2017.

Date: February 9, 2017

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel